IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>COLIANT SOLUTIONS, INC.<br><br>Debtor. | CHAPTER 11<br><br>CASE NO. 25-51509-PWB |
| COLIANT SOLUTIONS, INC.<br><br>Plaintiff,<br><br>v.<br><br>ADVANCE FINANCIAL CORPORATION,<br><br>Defendant. | ADVERSARY PROCEEDING<br>CASE NO. |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

Coliant Solutions, Inc. ("**Plaintiff**" or "**Debtor**") by and through its undersigned counsel, files this Complaint for Injunctive Relief against Advance Financial Corporation ("**Defendant**" or "**AFC**"), pursuant to 11 U.S.C. § 105. As the basis for the Complaint, the Plaintiff shows the Court as follows:

### INTRODUCTION

Debtor obtains funds to operate its Business through financing certain of its account receivables with AFC under the terms of the DIP Agreement. This lending relationship has existed for over seventeen (17) years. During the ordinary course of this lending relationship both prepetition and postpetition, Debtor has not presented to AFC all account receivables for funding.

AFC's Pre-petition Indebtedness has decreased by $1,303,193 to $384,457. AFC's postpetition indebtedness is $184,850. The total credit line is $2,000,000. AFC stopped advancing to Debtor on or about April 21, 2025 when the debt to collateral ratios were smaller, but AFC

1

continued to be oversecured. AFC's decision to stop lending had a snowball effect and prevented Debtor from fulfilling existing project contracts or obtaining new ones which led to Debtor furloughing over half its workforce.

Debtor began searching for a buyer and currently is in negotiations with a prospective purchaser of Debtor's stock. This sale will pay AFC in full while also paying accrued unpaid postpetition employee wages, unpaid postpetition payables, allowing for a five percent (5%) pro rata distribution to unsecured creditors on the effective date of a reorganization plan, among other payments. AFC possesses this information.

On June 2, 2025, AFC filed its *Notice of Exercise of Default Remedies* filed on June 2, 2025 (the "**Default Notice**") [Doc. No. 101 because Debtor had not paid to AFC payments on account receivables not loaned against by AFC. Debtor pays AFC daily or weekly any account receivable payments it receives on financed receivables and Debtor's customers with financed receivables pay AFC directly. AFC continues to be paid.

AFC is the only creditor in this bankruptcy case who is profiting from Debtor. Unsecured creditors and furloughed employees have not received any payments while AFC has reduced its prepetition debt by $1,300,000. Now, AFC intends to take Debtor's remaining stream of income to pay itself in full and to quell any possibility of consummating the potential sale.

Debtor seeks this injunctive remedy to allow it forty-five (45) days to finalize a sale. AFC will not be harmed as it will continue to receive all payments on all financed account receivables thereby reducing its debt. Without the opportunity to consummate the sale, every other creditor in this bankruptcy case will be harmed and Debtor will likely close its doors.

**JURISDICTION AND VENUE**

1.

The United States Bankruptcy Court for the Northern District of Georgia has jurisdiction

over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.

This is an adversary proceeding brought by Debtor pursuant to Rule 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for injunctive relief pursuant to § 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**").

## THE PARTIES

4.

Plaintiff is the debtor-in-possession in the above-captioned chapter 11 case.

5.

Defendant AFC may be served via First Class Mail at 3700 Mansell Road, Suite 550, Alpharetta, Georgia 30022, pursuant to Bankruptcy Rule 7004(b)(5).

## FACTUAL BACKGROUND

6.

On February 12, 2025 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor is operating and managing its business as Debtor-In-Possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

7.

An unsecured creditors' committee was appointed on March 25, 2025  the "**Committee**") [Doc. No. 76]. Cameron McCord is counsel for the Committee ("**Ms. McCord**") [Doc. No. 94].

3

8.

Debtor filed a motion to incur post-petition secured indebtedness by entering into the Loan and Security Agreement for DIP Receivables Financing (the "**DIP Agreement**"), granting AFC "superpriority" status and priming liens, and modifying the automatic stay [Doc. No. 11]. The Court granted the motion [Doc. Nos. 25, 43].

9.

Under the DIP Agreement, AFC is authorized to finance Debtor's postpetition account receivables on an ongoing basis up to Two Million Dollars ($2,000,000) which Debtor used in the ordinary course of its Business (the "**DIP Receivables Financing**"). The formula for funding the financing is an eighty percent (80%) advance rate against eligible receivables. Eligible receivables are defined as account receivable less than ninety (90) days from the invoice date.

10.

Debtor provides safety and security solutions for retailers and construction sites across the country by installing security systems and fire alarm systems across the country (the "**Business**"). Debtor's largest customer was Wal-Mart and it made up fifty percent (50%) of Debtor's Business. Debtor's other customers included construction contractors, Duncan Brands, and Dillards.

11.

Debtor also receives income from security systems monitoring, trailer rentals, home projects, and tax sales. Debtor generally does not, and did not prepetition, present these invoices to AFC for financing.

12.

Debtor's cash flow is controlled through its receivables financing with AFC. Since 2007, Debtor has maintained a consistent cash flow to operate its Business with the assistance of AFC. Under the prepetition agreement with AFC, AFC holds a security interest in each invoice Debtor

4

issues to a customer, the account receivables. With this collateral, AFC loaned cash to Debtor in the amount of 85% of the face value of each invoice. This credit facility was memorialized in a letter of credit with a $2 million limit. The letter of credit is paid down as Debtor's customers pay the account receivables invoices.

13.

In its ordinary course of dealing with AFC prepetition, Debtor did not present certain categories of accounts receivable invoices to AFC for financing. These invoices included those for security monitoring, trailer rentals, home projects, and any tax related invoices (the "**Nonfinanced Invoices**").

14.

Postpetition, Debtor continued this ordinary course of dealing with AFC. Debtor has not presented these categories of accounts receivable invoices for financing with AFC.

15.

In the ordinary course of business dealing with AFC, Debtor generally does not pay to AFC invoice payments Debtor receives on invoices not financed by AFC.

16.

As of the Petition Date, Debtor was indebted to AFC in the approximate amount of $1,687,650.06 as of the Petition Date (the "**Pre-petition Indebtedness**"), pursuant to the Receivables Financing Agreement and Security Agreement dated June 5, 2007, as amended by the First Amendment, Second Amendment, Third Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Seventh Amendment, Eighth Amendment, Ninth Amendment, and the Tenth Amendment (collectively, the "**AFC Financing Documents**"). The Pre-petition Indebtedness is secured by Debtor's inventory, chattel paper, accounts, contract rights, equipment, and all proceeds thereof owned by Debtor as of June 5, 2007 or thereafter acquired (the "**Collateral**"). As of June 9,

5

2025, the Pre-petition Indebtedness totals only $384,457. See AFC Availability Report dated June 9, 2025 and attached hereto as Exhibit A.

17.

During its seventeen year relationship with AFC, Debtor has presented WalMart and other corporate customer accounts receivable invoices to AFC for financing. Those customers generally pay AFC directly on the financed invoices. If Debtor receives a direct payment on financed invoices, it remits those payments to AFC on a daily or weekly basis as received.

18.

Debtor's obligation to repay to AFC the DIP Receivables Financing is secured by a security interest in, and lien upon, all of Debtor's accounts, account receivables, and personal property, whether tangible or intangible. The DIP Receivables Financing, together with any accrued but unpaid interest and other amounts due under the DIP Receivables Financing, is an allowed first priority secured claim, under Bankruptcy Code § 364(d), fully payable before any other secured claim, and a "superpriority" claim under Bankruptcy Code § 364(c), prior to and superior in right of payment of any other claim against Debtor or its estate, heretofore or hereafter arising or incurred in this case or any succeeding or superseding case under the Bankruptcy Code. The items described above in this paragraph are referred to herein as the "**DIP Collateral.**"

19.

In April 2025, AFC determined that Debtor was overadvanced and refused to loan against any invoices. The last date AFC loaned against an invoices was on or about April 21, 2025. Because AFC stopped lending against invoices, Debtor's cash flow became a trickle such that Debtor could not continue to maintain its WalMart contracts or retain numerous employees.

20.

On or about April 21, the Pre-petition Indebtedness totaled $658,634 and the collateral value was $756,251. On this date, the post petition indebtedness totaled $931,244 and the collateral value was $1,208,119. See AFC Availability Report dated April 21, 2025 attached hereto as Exhibit A.

21.

AFC's decision to stop funding caused harm to Debtor's Business. Debtor's cash flow decreased significantly as it could not complete projects for its customers.

22.

When AFC reviewed Debtor's bank statements for March through May 2025, it demanded that Debtor remit the Nonfinanced Invoices payments to AFC.  Debtor explained to AFC that it had used the Nonfinanced Invoices to fund the remaining Business operations.

23.

Debtor has not presented these categories of accounts receivable invoices for financing with AFC.  Postpetition, Debtor continued this ordinary course of dealing with AFC.

24.

The DIP Agreement does not contain a carve out for the Nonfinanced Invoices. Debtor did not include a carve out in the DIP Agreement as it believed that its ordinary course of dealing with AFC was not altered by the DIP Agreement.

25.

In May 2025, AFC and Debtor held a zoom call to discuss the issue. AFC refused to honor the ordinary course of dealing between them and, in fact, disclaimed such a practice.

26.

On May 30, 2025, while on vacation, Debtor's counsel had an extensive call with AFC's

counsel regarding the potential purchase of Debtor's stock. She explained to Mr. Weiss that Debtor needed 30-45 days to finalize the purchase agreement. She also confirmed that Mr. Stallings, the buyer, and she were to have conversations over that weekend with the buyer's board of directors. Debtor's counsel assured Mr. Weiss that she would provide an update on Monday, June 2, 2025 but that she was traveling back to Atlanta that day so the update would be later in the day.

27.

Debtor's counsel landed in Atlanta at 8:00 PM on June 2, 2025. When she checked her emails at approximately 9:00 PM, she saw that Mr. Weiss had filed the Notice of Default at 7:50 PM.

28.

Debtor's counsel immediately responded by email to Mr. Weiss expressing her dismay at this filing. She again asked Mr. Weiss to ask AFC for a 30-45 day window to memorialize the purchase agreement before exercising its default remedies. AFC was not inclined to do so.

29.

On June 2, 2025 the Pre-petition Indebtedness totaled $384,457 and the collateral value was $959,614. On this date, the post petition indebtedness totaled $187,250 and the collateral value was $546,652. See AFC Availability Report dated June 2, 2025 attached hereto as Exhibit A.

30.

On June 7, 2025 at approximately 3:49 PM, Debtor's counsel again spoke with Matt Weiss by phone regarding AFC's intentions to exercise its default remedies based upon the Default Notice.

31.

Counsel reiterated to Matt Weiss that Debtor was involved in intense negotiations with a possible purchaser of Debtor's stock that would satisfy AFC's remaining prepetition and postpetition loan balances of less than $570,000. This purchase also would provide immediate payment for

8

postpetition accrued but unpaid wages, postpetition accrued but unpaid payables, and a five percent (5%) pro rata payment to general unsecured creditors under a plan with additional pro rata payments to unsecured creditors over the next two years.

32.

Again, Debtor's counsel asked Matt Weiss to allow Debtor 30-45 days to continue operations and collect the Nonfinanced Invoices without AFC exercising its default remedies so that the sale can be consummated. Debtor will continue to remit to AFC during this 45-day period any payments Debtor receives on financed account receivables.

33.

Matt Weiss, on behalf of AFC, refused this request.

34.

He indicated that on the 5th business day from the Notice date, June 9, 2025, AFC would send notices to all of Debtor's customers to pay AFC directly, including all the Nonfinanced Invoices.

35.

When Debtor's customers receive these notices, Debtor will likely stop receiving payments which will effectively put Debtor out of business. Debtor will no longer receive any income and will not be able to pay its operating expenses. The potential buyer will cease negotiations, leaving Debtor without any possible path to reorganize and confirm a plan.

36.

AFC will continue its efforts to undermine Debtor's reorganization effort by taking exclusive control of Debtor's income stream for its own benefit, leaving Debtor without any source of revenue to operate and reorganize, even though AFC is being paid on a daily and weekly basis.

37.

On June 9, 2025, the Pre-petition Indebtedness totaled $390,793 and the collateral value was $955,209. On this date, the post petition indebtedness totaled $184,850 and the collateral value was $467,111. See AFC Availability Report dated June 9, 2025.

38.

Debtor is in the midst of negotiations with a potential buyer of Debtor's stock that will benefit all creditors, not only AFC.

39.

Debtor continues to operate its limited Business and as Debtor collects on account receivables loaned against by AFC, Debtor remits those payments to AFC and customers pay AFC directly. When Debtor collects on the Nonfinanced Invoices, Debtor retains those payments to operate the Business for the benefit of its other creditors and remaining employees.

## COUNT I: REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION PURSUANT TO 11 U.S.C. § 105

40.

Plaintiff hereby re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

41.

Plaintiff seeks a preliminary and permanent injunction under § 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065 enjoining AFC from exercising its default remedies under the *Post Petition Receivables Financing Agreement Entered Into Between Advance Financial Corporation and CoLiant Solutions, Inc.* dated February 21, 2025 and all other AFC Financing Documents for forty-five (45) days.

42.

AFC's exercise of its remedies is likely to cease Debtor's operations immediately unless AFC is enjoined from doing so.

43.

Debtor does not have an adequate remedy at law in this instance to prevent AFC from exercising its default remedies. Debtor's only recourse to prevent immediate and irreparable harm is to obtain an order from the Court enjoining AFC from exercising its default remedies, including contacting Debtor's customers whose invoices were not loaned against by AFC to demand payments be remitted to AFC.

44.

Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

45.

The Eleventh Circuit Court of Appeals has established that the party seeking a preliminary injunction must prove: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction will not disserve the public interest." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002).

46.

There is a substantial likelihood that Debtor will be able to restructure successfully if it can continue to operate to consummate the sale of the stock.

47.

From the sale of Debtor's stock, Debtor expects to have sufficient funds to pay AFC its

outstanding prepetition and postpetition balances which total less than $570,000. As of the Petition Date, AFC's balance was over $1.4 million. Now it is $384,457. AFC's postpetition balance is $184,850 and is secured by $467.111 postpetition accounts receivable. The initial payment of the purchase price also will pay in full the postpetition accrued wages, the postpetition payables, the secured tax debt, and a 5% pro rata payment to general unsecured creditors. If the sale is not consummated, Debtor's chances of reorganizing diminish significantly.

48.

If AFC is not enjoined from exercising its default remedies, such as contacting customers and directing all invoice payments to it, Debtor will suffer irreparable harm and its restructuring efforts will be threatened and destroyed. Debtor cannot operate without a stream of income. Without operating, a potential buyer will not purchase Debtor's stock.

49.

The likelihood of irreparable injury to Debtor in the absence of immediate injunctive relief far outweighs any harm to AFC, which is being paid on a daily and weekly basis. Debtor's injury of a failure to effectively reorganize will be irreparable and will harm all creditors in the Bankruptcy Case.

50.

Debtor is asking for a short window of forty-five (45) days to consummate a sale so that it can pay unsecured creditors and administrative claims under a plan. Debtor will continue to pay AFC on all invoices it loaned against. Debtor will continue to retain income received from invoices not presented to AFC for advances.

51.

The public interest will be served through Debtor's successful reorganization in the Chapter 11 case.

52.

The injunctive relief sought by Debtor is necessary and proper to allow Debtor to restructure and to provide it with an unobstructed opportunity to get a plan of reorganization confirmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief against Defendant as to Count I of this Complaint, and that the Court enter judgment against Defendant as follows:

A.  Granting an injunction pursuant to § 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065 enjoining Defendant from exercising its default remedies for 45 days; and

B.  Granting Plaintiff such other relief and further relief as this Court deems just and proper.

Dated: June 9, 2025                                  Respectfully submitted,

                                                    **ROUNTREE LEITMAN KLEIN & GEER, LLC**

                                                    */s/ Ceci Christy*
                                                    Ceci Christy, Ga. Bar No. 370092
                                                    Century Plaza I
                                                    2987 Clairmont Road, Suite 350
                                                    Atlanta, Georgia 30329
                                                    (404) 584-1238 Telephone
                                                    cchristy@rlkglaw.com
                                                    *Attorneys for Debtor*

# Availability Report

For (CS16) COLIANT SOLUTIONS INC.
*As of 04/21/2025*

| | | |
|---|---|---|
| **Loan** | AR   CS16   (CS16) COLIANT SOLUTIONS INC. | |
| **Line Amount** | 1,400,000.00 | |
| **Advance Rate** | 85 % | |
| Previous Collateral Balance | | 1,230,079.19 |
| Sales (Assignments) | | 0.00 |
| Credit Memos | | 0.00 |
| Collections | | 1,500.00 |
| Cash Discounts / Credits | | 0.00 |
| Collateral Adjustments | | 0.00 |
| Ending Collateral Balance | | 1,228,579.19 |
| Ineligible | | 472,328.47 |
| Total Eligible Receivables | | 756,250.72 |
| Total Accounts Receivable Value @ 85% | | 642,813.11 |
| Collateral Reserve | | 0.00 |

**Loan Balance Reconciliation**

| | |
|---|---|
| Previous Loan Balance | 660,133.53 |
| Collections | 1,500.00 |
| Loan Only | 0.00 |
| Advances | 0.00 |
| Other Loan Adjustments (wire, priority, audit, | 0.00 |
| *Current Loan Balance* | 658,633.53 |
| Reserve | 0.00 |
| Month to Date Interest | 3,796.60 |
| Month to Date Fees | 3,037.25 |
| **A/R Availability or (Over Advance)** | **-22,654.27** |

| | | |
|---|---|---|
| **Loan** | AR   CS16DIP   COLIANT SOLUTIONS, INC. DEBTOR IN POSSESSION | |
| **Line Amount** | 1,200,000.00 | |
| **Advance Rate** | 80 % | |
| Previous Collateral Balance | | 1,269,395.35 |
| Sales (Assignments) | | 38,220.00 |
| Credit Memos | | 0.00 |
| Collections | | 1,861.05 |
| Cash Discounts / Credits | | 224.55 |
| Collateral Adjustments | | 0.00 |
| Ending Collateral Balance | | 1,305,529.75 |
| Ineligible | | 97,410.33 |
| Total Eligible Receivables | | 1,208,119.42 |

| | |
|---|---:|
| Total Accounts Receivable Value @ 80% | 966,495.54 |
| Collateral Reserve | 0.00 |

**Loan Balance Reconciliation**

| | |
|---|---:|
| Previous Loan Balance | 884,569.94 |
| Collections | 1,861.05 |
| Loan Only | 480.00 |
| Advances | 49,000.00 |
| Other Loan Adjustments (wire, priority, audit, | 15.00 |
| *Current Loan Balance* | **931,243.89** |
| Reserve | 0.00 |
| Month to Date Interest | 5,352.84 |
| Month to Date Fees | 4,175.22 |
| A/R Availability or (Over Advance) | **25,723.59** |
| **Total Availability** | **3,069.32** |

# Availability Report

For (CS16) COLIANT SOLUTIONS INC.
*As of 06/02/2025*

| | | |
|---|---|---:|
| **Loan** | AR   CS16   (CS16) COLIANT SOLUTIONS INC. | |
| **Line Amount** | 1,400,000.00 | |
| **Advance Rate** | 85 % | |
| Previous Collateral Balance | | 959,614.13 |
| Sales (Assignments) | | 0.00 |
| Credit Memos | | 0.00 |
| Collections | | 0.00 |
| Cash Discounts / Credits | | 0.00 |
| Collateral Adjustments | | 0.00 |
| Ending Collateral Balance | | 959,614.13 |
| Ineligible | | 959,614.13 |
| Total Eligible Receivables | | 0.00 |
| Total Accounts Receivable Value @ 85% | | 0.00 |
| Collateral Reserve | | 0.00 |

**Loan Balance Reconciliation**

| | |
|---|---:|
| Previous Loan Balance | 391,362.50 |
| Collections | 0.00 |
| Loan Only | 580.00 |
| Advances | 0.00 |
| Other Loan Adjustments (wire, priority, audit, | 0.00 |
| *Current Loan Balance* | 390,782.50 |
| Reserve | 0.00 |
| Month to Date Interest | 212.30 |
| Month to Date Fees | 169.85 |
| **A/R Availability or (Over Advance)** | **-391,164.65** |

| | | |
|---|---|---:|
| **Loan** | AR   CS16DIP   COLIANT SOLUTIONS, INC. DEBTOR IN POSSESSION | |
| **Line Amount** | 1,200,000.00 | |
| **Advance Rate** | 80 % | |
| Previous Collateral Balance | | 991,441.70 |
| Sales (Assignments) | | 0.00 |
| Credit Memos | | 0.00 |
| Collections | | 0.00 |
| Cash Discounts / Credits | | 0.00 |
| Collateral Adjustments | | 0.00 |
| Ending Collateral Balance | | 991,441.70 |
| Ineligible | | 444,790.13 |
| Total Eligible Receivables | | 546,651.57 |

| | |
|---|---:|
| Total Accounts Receivable Value @ 80% | 437,321.26 |
| Collateral Reserve | 0.00 |

**Loan Balance Reconciliation**

| | |
|---|---:|
| Previous Loan Balance | 194,720.38 |
| Collections | 0.00 |
| Loan Only | 7,469.93 |
| Advances | 0.00 |
| Other Loan Adjustments (wire, priority, audit, | 0.00 |
| *Current Loan Balance* | 187,250.45 |
| Reserve | 0.00 |
| Month to Date Interest | 108.18 |
| Month to Date Fees | 84.38 |
| A/R Availability or (Over Advance) | **249,878.25** |

| | |
|---|---:|
| **Total Availability** | **-141,286.40** |

# Availability Report

**For (CS16) COLIANT SOLUTIONS INC.**
*As of 06/09/2025*

| | | |
|---|---|---|
| **Loan** | AR   CS16   (CS16) COLIANT SOLUTIONS INC. | |
| **Line Amount** | 1,400,000.00 | |
| **Advance Rate** | 85 % | |
| Previous Collateral Balance | | 955,208.99 |
| Sales (Assignments) | | 0.00 |
| Credit Memos | | 0.00 |
| Collections | | 0.00 |
| Cash Discounts / Credits | | 0.00 |
| Collateral Adjustments | | 0.00 |
| Ending Collateral Balance | | 955,208.99 |
| Ineligible | | 955,208.99 |
| Total Eligible Receivables | | 0.00 |
| Total Accounts Receivable Value @ 85% | | 0.00 |
| Collateral Reserve | | 0.00 |

**Loan Balance Reconciliation**

| | |
|---|---|
| Previous Loan Balance | 384,457.36 |
| Collections | 0.00 |
| Loan Only | 0.00 |
| Advances | 0.00 |
| Other Loan Adjustments (wire, priority, audit, | 0.00 |
| *Current Loan Balance* | 384,457.36 |
| Reserve | 0.00 |
| Month to Date Interest | 954.23 |
| Month to Date Fees | 763.40 |
| **A/R Availability or (Over Advance)** | **-386,174.99** |

| | | |
|---|---|---|
| **Loan** | AR   CS16DIP   COLIANT SOLUTIONS, INC. DEBTOR IN POSSESSION | |
| **Line Amount** | 1,200,000.00 | |
| **Advance Rate** | 80 % | |
| Previous Collateral Balance | | 991,441.70 |
| Sales (Assignments) | | 0.00 |
| Credit Memos | | 0.00 |
| Collections | | 0.00 |
| Cash Discounts / Credits | | 0.00 |
| Collateral Adjustments | | 0.00 |
| Ending Collateral Balance | | 991,441.70 |
| Ineligible | | 524,330.66 |
| Total Eligible Receivables | | 467,111.04 |

| | |
|---|---:|
| Total Accounts Receivable Value @ 80% | 373,688.83 |
| Collateral Reserve | 0.00 |

**Loan Balance Reconciliation**

| | |
|---|---:|
| Previous Loan Balance | 184,850.45 |
| Collections | 0.00 |
| Loan Only | 0.00 |
| Advances | 0.00 |
| Other Loan Adjustments (wire, priority, audit, | 0.00 |
| *Current Loan Balance* | 184,850.45 |
| Reserve | 0.00 |
| Month to Date Interest | 470.27 |
| Month to Date Fees | 366.81 |
| **A/R Availability or (Over Advance)** | **188,001.30** |

| | |
|---|---:|
| **Total Availability** | **-198,173.69** |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>COLIANT SOLUTIONS, INC.,<br><br>Debtor. | CHAPTER 11<br><br>CASE NO. 25-51509-PWB |
| COLIANT SOLUTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCE FINANCIAL CORPORATION,<br><br>Defendant. | ADVERSARY PROCEEDING NO.<br><br>_____ |

## **VERIFICATION**

Personally appeared before the undersigned Notary Public duly authorized to administer oaths, came Ken Stalling, the Chief Executive Officer of CoLiant Solutions, Inc., who deposes and states that he has reviewed his foregoing Verified Complaint and Motion for Emergency Ex Parte Temporary Restraining Order and that, to the best of his knowledge, the information contained therein is true and correct.

This 9th day of June 2025.

_____
Ken Stallings

Sworn to and subscribed before me
this 9th day of June 2025.

_____
Notary Public

[Notary Seal: M J KLEIN WINOKUR, NOTARY PUBLIC, GWINNETT COUNTY, GEORGIA, My Commission Expires June 10, 2027]